IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOYCE SNYDER                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:17-CV-00200-SA-DAS

L-3 COMMUNICATIONS VERTEX
AEROSPACE, LLC, and IUE-CWA
INDUSTRIAL DIVISION OF THE
COMMUNICATIONS WORKERS OF AMERICA              DEFENDANTS

ORDER

The Plaintiff, Joyce Snyder, filed her Complaint [1] on November 30, 2017, alleging both a Title VII claim against L-3 Communications Vertex Aerospace, LLC and a failure to timely arbitrate claim against IUE-CWA Industrial Division of the Communications Workers of America. Presently before the Court is L-3 Communications' Motion to Sever [23].

*Factual and Procedural Background*

L-3 Communications hired the Plaintiff to work in its aircraft service department. While working there, the Plaintiff was a member of the Communication Workers Union and worked pursuant to a Collective Bargaining Agreement entered into between these Defendants. In 2014, the Plaintiff alleges that she was sexually harassed by a male co-worker. She filed a charge with the Equal Employment Opportunity Commission complaining about the harassment and was discharged from her employment.

The Plaintiff was later re-hired by L-3 Communications as a part of a settlement with the Commission. According to the Plaintiff, after she was rehired, gender discrimination and sexual harassment continued. Six months after returning to work, the Plaintiff received several

reprimands for offenses she claims her male co-workers did not receive for identical offenses. The Plaintiff was eventually discharged a second time.

In this case, the Plaintiff alleges a Title VII claim against L-3 Communications, alleging that she was retaliated against after filing a charge with the Commission and discharged because of her gender. Separate from the Title VII claim, the Plaintiff also alleges that the Communication Workers Union failed to timely arbitrate her grievance as required under the Collective Bargaining Agreement. This Agreement provides that any disciplinary action must be issued within ten full work days of the company's knowledge of a rule violation. The Plaintiff asserts that she was terminated outside of the ten-day window prescribed by the Collective Bargaining Agreement. According to the Plaintiff, after L-3 Communications fired her, the Communication Workers Union failed to timely pursue arbitration on her behalf as required by the Collective Bargaining Agreement. L-3 Communications filed a Motion to Sever [23] seeking to separate the Plaintiff's two claims.

*Discussion*

L-3 Communication seeks severance under Federal Rule of Civil Procedure 21. District Courts consider five factors when considering severance: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated by severance; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Super Truck Stop 35-55, LLC v. Nissi Ins. Sols., LLC*, No. 4:15-CV-125-DMB, 2016 WL 5477725, at *9 (N.D. Miss. Sept. 29, 2016). Under Rule 21, a district court has broad discretion in severance of claims. *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994).

The first factor asks whether the claims arise out of the same transaction or occurrence. L-3 Communications argues that the Title VII claim deals exclusively with the reasons the Plaintiff was discharged while the failure to timely arbitrate claim addresses L-3 Communications' alleged violation of the Collective Bargaining Agreement. In response, the Plaintiff argues that the claims are inextricably intertwined because the claim against the Communication Workers Union relies on proof that she was terminated without cause, just like the Title VII claim against L-3 Communications.

The Fifth Circuit has not expressly addressed the "transaction or occurrence" factor under the five-prong severance test used for Rule 21 severance analysis. It has applied a "logical relationship" test to Rule 13(a) which employs the same "transaction or occurrence" analysis. *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co., Inc.*, 730 F.2d 377, 380 (5th Cir. 1984). District Courts within the Fifth Circuit have used the logical relationship test when analyzing the "transaction or occurrence" factor under other rules. *See Cooper v. Meritor, Inc.*, 2018 WL 1934065, at *2 (N.D. Miss. April 24, 2018) (applying the logical relationship test to Rule 20). Absent any indication that "transaction or occurrence" under Rule 21 should be analyzed under a different test, the Court will employ the Fifth Circuit's logical relationship test to determine whether the claims arise out of the same transaction or occurrence. The Court acknowledges that Rule 21 generally addresses misjoinder and nonjoinder of parties, however, the last sentence looks at severance of claims, which is relevant here. *See* Fed. R. Civ. P. 21.

The logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits. *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014). The Fifth Circuit gives weight to whether the claims at issue share an 'aggregate of operative facts.' *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir.

3

1998). Operative facts are "those relating directly to the . . . claims" in an action. *Cooper*, 2018 WL 1934065, at *2 (*citing Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 190 (D.D.C. 2013)).

The facts that gave rise to this dispute are generally the same or substantially the same. Both claims essentially stem from Snyder's employment with L-3 Communications. Her individual legal claims, however, are mostly supported by distinctly different operative facts.

Regarding the Title VII claim, the facts must prove that she was sexually harassed by her male co-workers and was fired because of her gender. In addition, she must pull from those facts to show that she was retaliated against after she filed a charge with the Commission.

The separate claim against the Communications Workers Union extracts its operative facts from a different part of the case. The operative facts for her claim against the union must show that she was reprimanded or fired outside of the ten-day window as prescribed in the Collective Bargaining Agreement, and that arbitration on her behalf was not timey sought. These facts are unrelated to the facts that gave rise to the sexual harassment claim. Because the operative facts relevant to establishing each claim share no logical relationship, the Court finds that the claims do not arise from the same transaction or occurrence.

Secondly, the Court must consider whether the claims present some common questions of law or fact. At issue in the Plaintiff's Title VII claim is whether Snyder's gender and EEOC charge were the reasons L-3 Communications discharged her. *See McDonnell Douglass Corp. v. Green*, 411 U.S. 797, 802, 93 S.Ct. 1817, 24, 36 L.Ed. 2d 668 (1973) (establishing the standard of proof and order of proof for a prima facie Title VII case).

In contrast, the issue in the breach claim is whether the Communication Workers Union timely sought arbitration regarding L-3 Communications' alleged breach. This claim is contractual

in nature and requires a different application of law. The Fifth Circuit in *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, outlines that "breach of duty of fair representation occurs only when the union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 880 F.2d 846, 852 (5th Cir. 1982); *citing Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed. 2d 842 (1967). It is clear that the Plaintiff's claims do not share common questions of law or fact.

The third factor asks whether the settlement of the claims or judicial economy would be facilitated through severance. Severance of these claims does present the Court with an additional use of Court resources to ensure each claim receives adequate attention. This, however, does not amount to a hindrance on the judicial economy of the Court. Because these discrete claims do not present administratively complex or arduous issues for the Court in litigation, this factor weighs in favor of severance.

Turning to the fourth factor, the Court must determine whether prejudice would be avoided if severance were granted. The Plaintiff argues that the litigation cost of two separate actions would negatively affect her case. Meanwhile, the Defendant argues that there is a high chance of jury confusion if the claims are tired together and prejudice could be avoided if severance were granted. The likelihood of jury confusion is apparent considering the overlapping facts surrounding competing legal issues. Requiring the parties to present both legal issues during the same trial creates an obvious risk of jury confusion and an injustice to all parties. In *Hammons v. Adams*, the Fifth Circuit found severance proper due to the likelihood of jury confusion. 786 F.2d 1253 (5th Cir. 1986). Specifically, the court found that substantial overlap in events between distinct claims presented the possibility of juror confusion. *Id*.

Finally, the Court must consider whether different witnesses and documentary proof are required for separate claims. Because each claim has different questions of law and fact, they are likely to require different witnesses and documentary proof. To establish a Title VII prima facie case, the Plaintiff will need testimony regarding the alleged sexual harassment from either similarly situated co-workers, those who observed said events, and other relevant testimony that tend to prove sexual harassment and retaliation. The Defendant will need testimony and/or documents to demonstrate a legitimate non-discriminatory reason for her discharge. In addition, the Plaintiff will need testimony to prove that the stated reasons for discharge are pretextual. Regarding the breach claim, different witnesses and documents would likely be needed since the contract claim does not require the same order of proof or evidentiary substance as required by the Title VII claim. This factor weighs in favor of severance.

*Conclusion*

As noted above, the Court analyzes a motion to sever through the five factors outlined in *Super Truck Stop 35-55, LLC,* 2016 WL 5477725, at *9. No one factor is dispositive, and the Court has authority to weigh the factors and decide whether severance is appropriate. After carefully and justly applying these factors to the facts of this case, the scales lean heavily towards severance. L-3 Communications' Motion to Sever [23] is GRANTED. Parties are directed to promptly contact the Magistrate Judge assigned to this case to schedule a case management conference.

So ORDERED on this the 13th day of November, 2018.

/s/ Sharion Aycock  
UNITED STATES DISTRICT COURT JUDGE